No. 24-2204

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE: ON24, INC. SECURITIES LITIGATION

LEADERSEL INNOTECH ESG,

*Plaintiff-Appellant*,

v.

ON24, INC.; SHARAT SHARAN; STEVEN VATTUONE; DENISE PERSSON; HOLDGER STAUDE; DOMINIQUE TREMPONT; BARRY ZWARENSTEIN; GOLDMAN SACHS & CO. LLC; J.P. MORGAN SECURITIES LLC; KEYBANC CAPITAL MARKETS INC.; ROBERT W. BAIRD & CO. INCORPORATED; CANACCORD GENUITY LLC; NEEDHAM & COMPANY, LLC; PIPER & SANDLER & CO.; WILLIAM BLAIR & COMPANY, L.L.C.,

*Defendants-Appellees*.

Appeal from the U.S. District Court for the Northen District of California,
No. 4:21-cv-08578-YGR, Hon. Yvonne Gonzalez Rogers

## JOINT SUPPLEMENTAL BRIEF FOR DEFENDANTS-APPELLEES

ANNA ERICKSON WHITE
DAVID J. WIENER
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105

BRIAN R. MATSUI
MORRISON & FOERSTER LLP
2100 L Street NW, Suite 900
Washington, DC 20037
(202) 887-8784
BMatsui@mofo.com

ALEXANDRA M. AVVOCATO
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019

*Counsel for Defendants-Appellees ON24, Inc.; Sharat Sharan; Steven Vattuone; Denise Persson; Holger Staude; Dominique Trempont; Barry Zwaranstein*

*Additional counsel listed on inside cover*

NOVEMBER 16, 2025

THOMAS M. PETERSON
CHARLENE S. SHIMADA
KEVIN M. PAPAY
MORGAN, LEWIS & BOCKIUS LLP
One Market
Spear Street Tower
San Francisco, CA 94105
(415) 442-1000
thomas.peterson@morganlewis.com

*Counsel for Defendants-Appellees
Goldman Sachs & Co. LLC; J.P. Morgan
Securities LLC; KeyBanc Capital
Markets Inc.; Robert W. Baird & Co.
Incorporated; Canaccord Genuity LLC;
Needham & Company, LLC; Piper
Sandler & Co.; William Blair & Company
L.L.C.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ................................................................................1

ARGUMENT .......................................................................................3

I.   *SODHA* REAFFIRMS THE PRECEDENT THAT FORECLOSES PLAINTIFF'S SECTION 11 FALSE-OR-MISLEADING CLAIM .............3

    A.   Under *Sodha* And Related Decisions, ON24 May Not Be Held Liable For Failing To Predict The Future .............................................3

        1.   *Sodha* repeats the widespread rule that issuers are not required to characterize or disclose contingent future risks as certainties .................................................................5

        2.   Under this rule, ON24's risk disclosures were not only adequate, but also prevented any other statements from being materially false or misleading ...........................................8

    B.   Plaintiff's Supplemental Brief Fails To Reconcile Its Shifting Theories Of Liability With This Precedent .........................................11

II.  *SODHA* CONFIRMS THAT PLAINTIFF ALSO FAILS TO ALLEGE VIOLATIONS OF ANY DISCLOSURE DUTY UNDER ITEM 303 OF REGULATION S-K .......................................................................16

    A.   Plaintiff Fails To Allege Any Risk Of Future Non-Renewal That ON24 Was Required To Disclose .....................................................17

    B.   The Same Deficiencies Foreclose Plaintiff's Forfeited, Alternative Item 303 Theory Based On Customer Composition And Stated Retention Intentions .............................................................19

    C.   ON24 Satisfied Any Disclosure Obligation That Might Have Existed Under Either Of Plaintiff's Item 303 Theories ......................20

CONCLUSION ....................................................................................22

# TABLE OF AUTHORITIES

## Cases

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) ................................................................. 9

*In re Convergent Techs. Sec. Litig.*,
  948 F.2d 507 (9th Cir. 1991) ........................................................ 9, 11

*In re Facebook, Inc. Sec. Litig.*,
  87 F.4th 934 (9th Cir. 2023) ............................................................ 9

*Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*,
  45 F.4th 1236 (10th Cir. 2022) ......................................................... 7

*Karth v. Keryx Biopharmaceuticals, Inc.*,
  6 F.4th 123 (1st Cir. 2021) ............................................................ 6, 7

*Lloyd v. CVB Fin. Corp.*,
  811 F.3d 1200 (9th Cir. 2016) ......................................................... 13

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015) ........................................................................ 13

*Orr v. Plumb*,
  884 F.3d 923 (9th Cir. 2018) ........................................................... 19

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
  297 F.3d 1182 (11th Cir. 2002) ............................................. 17, 18, 21

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014) ......................................................... 13

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012) ........................................................... 14

*Sodha v. Golubowski*,
  154 F.4th 1019 (9th Cir. 2025) ....................................... 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18, 20, 21

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ...................................................1, 6, 7, 8, 10, 11, 12

*In re VeriFone Sec. Litig.*,
    11 F.3d 865 (9th Cir. 1993) ...........................................................................6, 10

*Williams v. Globus Med., Inc.*,
    869 F.3d 235 (3d Cir. 2017) .........................................................................6, 15

*Wilson v. Merrill Lynch & Co.*,
    671 F.3d 120 (2d Cir. 2011) ...............................................................................7

*In re Worlds of Wonder Sec. Litig.*,
    35 F.3d 1407 (9th Cir. 1994) ..............................................................................6

## Regulations

17 C.F.R. § 229.303 ...........................................................................................18

## INTRODUCTION

This Court's decision in *Sodha v. Golubowski* confirms the fundamental flaw in plaintiff's case: plaintiff may not demand that defendants (collectively, "ON24") attempt to predict the future. Plaintiff contends that ON24 failed to disclose in its offering documents that material customer non-renewal would occur after ON24's IPO. But as *Sodha* explains, issuers are "not require[d] … to make disclosures that would invite charges of speculation," such as "forecasts" or statements about a "contingen[t] future event." 154 F.4th 1019, 1035 & n.5 (9th Cir. 2025). That is so even when a third party informs an issuer of its intent to take a future action, as alleged here, because another's "plans cannot be known to a certainty" until they actually occur. *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1407 (9th Cir. 1996).

Thus, ON24 was required at most to warn of the *risk* of future non-renewal. It amply warned of that risk—as well as the factors underlying that risk. ON24 explained that its "recent revenue growth has been significantly impacted by an increasing demand for [ON24's] platform and products following the onset of the COVID-19 pandemic and resulting precautionary measures." ER-63 (¶181). It cautioned that "if the effects of the COVID-19 pandemic subside, [its] customers and their users will resume in-person marketing activities in a way that decreases usage of [ON24's] platform." 1-SER-65. And it stated that "[i]f these new customers elect not to continue their subscriptions," ON24's "business, financial

condition and results of operations would be harmed." ER-63 (¶181). In light of these disclosures, none of the six statements plaintiff challenges—those same risk disclosures and ON24's statements about its customers, historic revenue, and hopes for future growth—can be deemed false or misleading.

Plaintiff cannot avoid that conclusion. Indeed, it largely ignores the requirements Section 11 imposes. To read plaintiff's supplemental brief, one would think Section 11 permits liability for mere omissions, untethered from specific statements. As *Sodha* confirms, that is not the standard: an omission is not enough unless it renders a statement false or misleading, which cannot be shown here. Nor can plaintiff shoehorn its case into *Sodha*'s narrow facts by arguing ON24 was required to disclose pre-IPO "events": namely, alleged changes in ON24's customer base and some customers' statements that they planned not to renew because ON24 was a COVID-related expense. First, to the extent plaintiff challenges specific statements in connection with this theory, they are non-actionable expressions of corporate optimism. Second, any omissions—even if adequately alleged and even if the omitted facts were material on their own—cannot have been false or misleading in light of ON24's explanation that COVID-related "new customers" might not renew if pandemic-related restrictions changed. Third, the undisputed financial metrics foreclose this theory, just as they foreclose plaintiff's account of material non-renewal.

Finally, nothing about *Sodha* cures plaintiff's deficient (and partially forfeited) Item 303 theory, which would have demanded ON24 disclose an admittedly non-existent "trend."[1]

The dismissal of plaintiff's complaint should be affirmed.

## ARGUMENT

### I. *SODHA* REAFFIRMS THE PRECEDENT THAT FORECLOSES PLAINTIFF'S SECTION 11 FALSE-OR-MISLEADING CLAIM

#### A. Under *Sodha* And Related Decisions, ON24 May Not Be Held Liable For Failing To Predict The Future

Plaintiff alleged that ON24 knew of, yet failed to disclose, material customer non-renewal (or churn) that purportedly started before ON24's February 2021 IPO and continued after the IPO. ER-24 (¶10); ER-59-61 (¶178). Yet, as the district court ruled, plaintiff failed to plausibly allege that any material churn was occurring either before or after the IPO, both because of the internal inconsistencies in plaintiff's complaint and because of the undisputed metrics showing ON24's post-IPO growth. ER-11-17. Even had plaintiff alleged material post-IPO churn in the months after the registration statement was issued, ON24's "detailed disclosures warn[ed] of the very risks that plaintiff claims ON24 failed to disclose": they

---

[1] Plaintiff has abandoned its Item 105 theory of liability, recognizing it is foreclosed by *Sodha*. Supp.Br.13-14.

explained the possibility that new customers might decline to renew their subscriptions if pandemic-related restrictions lessened. ER-16-17.

On appeal, plaintiff has largely abandoned its argument that material *pre*-IPO churn occurred. Supp.Br.12 (acknowledging that ON24's alleged new customers "were still within their initial contract periods during the months following the IPO" such that ON24's "revenues remained temporarily elevated" during that period). Plaintiff argues instead that ON24 should have predicted post-IPO churn to a certainty, rather than merely warning of that possibility. *E.g.*, Opening.Br.37; Supp.Br.2, 8-10.[2] Yet Ninth Circuit precedent is clear: plaintiffs may not hold issuers liable for not predicting the future, including a third party's potential actions. Response.Br.47-50. The Court's opinion in *Sodha* reaffirms this rule—one that is consistent with multiple other circuits.

---

[2] To the extent plaintiff still asserts material pre-IPO churn, that theory fails for the reasons ON24 explained in its merits brief. Response.Br.22-44. Among other things, material pre-IPO churn is not alleged on the basis that a "handful" of one ON24 former employee's 25-30 new customers had six-month contracts. The complaint fails to allege when those contracts were up for renewal. ER-53 (¶161). Even assuming all those contracts expired without renewal before the IPO, plaintiff cites no case suggesting a material misstatement or omission could rest on failing to disclose the loss of a single-digit number of customers out of nearly 2,000 total. Nothing in *Sodha* speaks to, much less cures, those pleading deficiencies.

1. ***Sodha* repeats the widespread rule that issuers are not required to characterize or disclose contingent future risks as certainties**

*Sodha* assessed a Section 11 claim arising out of very different facts. Defendant Robinhood's IPO documents disclosed financial metrics and performance indicators from one quarter, but Robinhood failed to disclose interim financial results showing that several of those metrics and indicators had sharply declined after that quarter. *Sodha*, 154 F.4th at 1033-35. The Court held that, under those particular circumstances, Section 11's duty-to-disclose standard merged with the materiality standard; in other words, Robinhood was required to disclose such interim financial information if it was material. *Id.* A similar logic applied to allegations that Robinhood had "warned of certain future risks but did not state that those risks had already come to fruition": if pre-IPO developments meant "risks falsely portrayed as contingent" in the offering documents had "actually c[o]me to pass," a duty to disclose would arise if that information was material. *Id.* The Court remanded for the district court to consider materiality. *Id.* at 1036-37.

Key to the Court's ruling was that the undisclosed information concerned events that had actually occurred *before* Robinhood's IPO. The Court distinguished those facts from longstanding Ninth Circuit precedent that does "not require registrants to make disclosures that would invite charges of speculation" about the future, such as disclosures about internal "plans or projections," "forecasts"

regarding future performance, or statements about a "contingen[t] future event." *Id.* at 1035 & n.5 (alteration in original) (citing *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1419 (9th Cir. 1994); *In re VeriFone Sec. Litig.*, 11 F.3d 865, 869 (9th Cir. 1993); and *Stac*, 89 F.3d at 1406-07). Thus, the *Sodha* plaintiffs would not have been able to "fault Robinhood's IPO disclosures for omitting events that took place *after* the IPO." *Id.* at 1034 n.4 (emphasis added). But because Robinhood allegedly "omitted its actual results, not any estimates, these cases d[id] not support its position." *Id.* at 1035.

The line *Sodha* draws mirrors that of other circuits. For instance, the Third Circuit dismissed a challenge to risk disclosures in which a company "warned that the loss of an independent distributor could have a negative impact on sales—but … omitted to warn investors … that [the company] had *in fact* lost an independent distributor." *Williams v. Globus Med., Inc.*, 869 F.3d 235, 241 (3d Cir. 2017). The court explained that the risk "actually warned of [was] the risk of adverse effects on sales—not simply the loss of independent distributors generally." *Id.* at 242. Thus, without allegations that the company "was already experiencing an adverse financial impact at the time of the risk disclosures" or that such an impact "was inevitable," plaintiffs' claim failed. *Id.* at 243; *see also Karth v. Keryx Biopharmaceuticals, Inc.*, 6 F.4th 123, 138 (1st Cir. 2021) (company "not necessarily liable for characterizing [a] risk as a 'future risk'" if it "does not 'know with certainty' that [the] risk would

6

materialize" (quoting *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 130-31 (2d Cir. 2011))); *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1255-57 (10th Cir. 2022) (disclosures not misleading even though they failed to convey company had "fallen behind its sales ramp capacity plan and would struggle to maintain its billings growth" because "nothing in the complaint support[ed] the inference that [d]efendants knew [the company] was so far behind in its sales ramp capacity plan that it was virtually certain to cause harm to the business"). The securities laws do not "require a company to be omniscient, even if the company looks foolish in hindsight for not properly predicting whatever harm befell it." *Karth*, 6 F.4th at 138.

Finally, this Court has held—in one of the prior decisions *Sodha* cited—that a future risk is necessarily contingent, and thus properly described as such, if it turns on a third party's potential actions. In *Stac*, the Court assumed as true plaintiff's claim that Microsoft "had informed" defendant that it "planned to introduce" a competing product. 89 F.3d at 1407. Defendant framed this possibility as a contingent risk, explaining that Microsoft "has licensed a competitive data compression product" and that "[t]here can be no assurance that Microsoft ... will not incorporate a competitive data compression technology in their products." *Id.* at 1406 (emphasis omitted). Plaintiffs argued this disclosure was inadequate because defendant "*knew* that Microsoft was going to come out with a competitive product." *Id.* (emphasis in original). This Court disagreed: it held that, despite Microsoft's

statement, defendant "could not have known whether Microsoft would truly" release that product because another's "plans cannot be known to a certainty." *Id.* at 1407.

**2.** **Under this rule, ON24's risk disclosures were not only adequate, but also prevented any other statements from being materially false or misleading**

This case presents the inverse scenario from *Sodha*. Unlike in *Sodha*, there was no unfavorable financial information—and certainly no interim "retention rates and growth metrics" (Supp.Br.8)—that ON24 chose not to disclose that would have cast a different light on the statements plaintiff challenges. Opening.Br.13-17 (listing six statements ON24 made about its customers, historic revenue growth, hopes for further growth, and risk disclosures). To the contrary, and as plaintiff does not dispute (Supp.Br.12), ON24 continued to grow in the quarters directly before and directly after the IPO. Response.Br.4-9. Thus, any interim financial information ON24 might have had at the time of the IPO (and plaintiff does not allege ON24 possessed any such information) would have been *favorable*.

Instead, plaintiff argues that ON24 failed to state a prediction that a material number of new customers would decline to renew their contracts when they came due *after* the IPO. *E.g.*, Opening.Br.44-48; Supp.Br.2-3. But those are precisely the future contingencies that need not (and cannot) be disclosed as a certainty, as *Sodha* and other Ninth Circuit cases explain. 154 F.4th at 1034-35 & nn.4-5. Rather, an issuer properly describes a known risk as potential when it has "not come to

8

fruition." *Id.* at 1034-35; *accord In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 704 (9th Cir. 2021); *In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 950 (9th Cir. 2023) (discussed at Response.Br.50-53); *In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 515 (9th Cir. 1991) (deeming "adequate" warnings that "[t]here can be no assurance" of a company's continued success in light of specific, identified future obstacles); *supra* pp.6-7 (similar cases from other circuits).

Accordingly, ON24 disclosed precisely what it needed to:

> We have experienced significant revenue growth during 2020, with our revenue increasing by 59% for the nine months ended September 30, 2020 as compared to the nine months ended September 30, 2019. Our recent revenue growth has been significantly impacted by an increasing demand for our platform and products following the onset of the COVID-19 pandemic and resulting precautionary measures. *As the impact of COVID-19 lessens, there may be reduced demand for our platform, and our revenue growth rate may decline. If these new customers elect not to continue their subscriptions as the impact of COVID-19 lessens, our business, financial condition and results of operations would be harmed.*

ER-63 (¶181) (emphasis altered); *see* 1-SER-65 (warning it was "possible that, if the effects of the COVID-19 pandemic subside, [ON24's] customers and their users will resume in-person marketing activities in a way that decreases usage of [ON24's] platform"); ER-63-64 (¶182-83) (similar disclosures). Far from presenting a "rosy narrative[] that implied sustainability" (Supp.Br.2), these disclosures stated plainly that ON24 "may not be able to sustain [its] recent revenue growth rate in the future"

9

because of decreased demand from "new customers." ER-63 (¶181). They thus foreclose the possibility that *any* challenged statement—including ON24's optimistic statements about its customers, historical growth, and hopes for future growth (Opening.Br.13-17)—"affirmatively create[d] an impression of a state of affairs that differ[ed] in a material way from the one that actually exist[ed]." *Sodha*, 154 F.4th at 1033. Requiring any more would improperly demand ON24 "make a forecast of future events." *VeriFone*, 11 F.3d at 869; *Sodha*, 154 F.4th at 1033-35 (collecting cases).

That conclusion is not altered by plaintiff's allegation that some unspecified number of customers informed ON24 before the IPO of their future "intent" not to renew their subscriptions because "ON24 was a COVID-related expense." ER-43 (¶¶106-07). After all, the same was true in *Stac*, in which this Court held that another's "plans cannot be known to a certainty." 89 F.3d at 1407; *supra* pp.7-8. Here too, ON24 could not have known to a certainty that those customers would not renew—particularly at the time of the IPO in February 2021, during the height of lockdowns, before widespread vaccination, and when future restrictions on in-person gatherings and the accompanying need for continued virtual platforms remained deeply uncertain. *Contra* Supp.Br.1-2 (arguing that ON24 "knew before" the IPO that the "pandemic-driven rush to virtual event platforms" was "already reversing"). Indeed, had ON24 stated definitively that its new customers would not

10

renew by predicting that pandemic-related restrictions would ease, it would likely have been subject to "charges of speculation." *Sodha*, 154 F.4th at 1035; *cf., e.g.*, *Convergent*, 948 F.2d at 516 ("[t]here is no evidence … that the estimates were made with such reasonable certainty even to *allow* them to be disclosed to the public").

Nor does it matter that ON24 monitored churn *risk* for its accounts and attempted to "save" accounts that might not renew (ER-56 (¶172))—as many companies likely do. A company's efforts to prevent a future negative result from occurring hardly supports the inference that it knows for a certainty that result will occur. If anything, it suggests the opposite: that the company believed its efforts could prevent non-renewals. And even assuming ON24's internal monitoring could be analogized to internal projections—a comparison plaintiff has failed to establish—any such projections would fall well within the contingent-future-event side of the disclosure line this Court's precedent draws. *See Stac*, 89 F.3d at 1406 (companies are "not obliged to disclose [their] internal projections because such projections are tentative" (citing *Convergent*, 948 F.2d at 515-16)).

### B.   Plaintiff's Supplemental Brief Fails To Reconcile Its Shifting Theories Of Liability With This Precedent

Plaintiff's supplemental brief loses sight of the Section 11 standard at the outset:  it hardly tethers its arguments to the six statements it challenges, as Section 11 requires; and it suggests that liability may attach merely for omitting "material"

11

information. Supp.Br.7-10. Moreover, plaintiff either misinterprets or ignores *Sodha* and the precedent it cites.

To start, plaintiff attempts to characterize ON24's customers' predictions about their future intentions as "concrete" and "existing facts" or "present realities" akin to the revenue results in *Sodha*. Supp.Br.2-3, 9-10. But that cannot be reconciled with *Sodha*, *Stac*, and similar cases. *Supra* pp.5-8. For instance, *Stac* involved a third-party communication nearly identical to those alleged here: Microsoft had directly "informed" defendant that it "planned to introduce" a competing product. 89 F.3d at 1407. Despite that communication, the company had no obligation to disclose anything beyond a *risk* that a competing product might be introduced; it did not need to state that the risk would materialize. This Court should decline to depart from those decisions—something this Court may only do en banc— and create a division with other courts of appeals that have decided similar issues.

In an effort to evade *Sodha* and *Stac*, plaintiff belatedly tries to recharacterize its complaint as primarily alleging that ON24 was required to disclose a pre-IPO change in customer base to one with a worse "composition, sustainability, and risk profile." Supp.Br.10. In doing so, plaintiff argues that ON24's description of an "engaged" and "loyal" customer base and "historical retention rates and growth metrics" was false or misleading in light of the new "COVID customers" ON24 was purportedly signing and the unspecified number of customers who had told ON24

12

they did not plan to renew. Supp.Br.8-10. That argument fails for multiple independent reasons.

First, ON24's description of "loyal" and "engaged" customers is a paradigmatic example of puffery or corporate optimism that is neither "determinate" nor "verifiable" and thus cannot be the basis of a Section 11 claim as a matter of law. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 184 (2015); *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206-07 (9th Cir. 2016) (company boasts of "sound" credit quality, "superior" credit metrics, and "strong credit culture" inactionable as "vague, optimistic statements"); Response.Br.44-47 (collecting cases); *see also* ER-101-03 (district court ruling in first dismissal order these statements were nonactionable on that basis). Even assuming "loyal" and "engaged" could be a verifiable metric, lack of loyalty and engagement could not be known until a customer actually failed to renew—and that alleged phenomenon had not yet occurred at the time of the IPO. *E.g.*, Supp.Br.12. The same is true for ON24's description of "consistent ARR growth" that reflected "success in acquiring new customers and expanding subscriptions with existing customers" and its expressed "belie[f]" that it would "achieve significant growth" and "increase sales" in the future—to the extent plaintiff even continues to challenge these statements. ER-59 (¶177); ER-61 (¶179); *see Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) (statements that sales opportunity was

"very, very large" and that "there is potential for growth in the [] market" inactionable as a matter of law).

Second, plaintiff misses the point in insisting the determinative question is whether ON24 omitted material information. Supp.Br.8-9. As *Sodha* explains, "'as long as the omissions do not make the actual statements misleading,' disclosure is not required 'even if the company discloses some related information and even if investors would consider the omitted information significant.'" *Sodha*, 154 F.4th at 1033 (alterations omitted) (quoting *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012)). Here, it is impossible to infer that any of ON24's statements "affirmatively create[d] an impression of a state of affairs that differs in a material way from the one that actually exist[ed]." *Sodha*, 154 F.4th at 1033. ON24 both explained the origin of its new customers and warned of their possible non-renewal. ER-57 (¶175) (success in "acquiring new customers and expanding subscriptions with existing customers … accelerated in 2020 partly in response to the COVID-19 pandemic"); ER-59 (¶177) ("recent revenue growth has been significantly impacted by an increasing demand for [ON24's] platform and products following the onset of the COVID-19 pandemic and resulting precautionary measures"); ER-63 (¶181) ("[i]f these *new customers* elect not to continue their subscriptions," ON24's "business, financial condition and results of operations would be harmed" (emphasis added)). Moreover, because ON24's risk disclosures

14

concerned the risk of non-renewal, they did not need to disclose details concerning customer-base shift or third-party statements where those events had not caused non-renewal. *Sodha*, 154 F.4th at 1035; *Globus Med.*, 869 F.3d at 241-43.[3]

Third, ON24's offering documents provided undisputed metrics showing there was no meaningful customer-base shift to disclose. In statements plaintiff does not challenge, ON24 explained its customer base was "diverse" and that ON24's 2020 growth came from both new *and existing* customers, including an increasing number of large companies. 1-SER-47; ER-23-24 (¶7); ER-37 (¶¶71-72); 1-SER-59; 1-SER-69; 1-SER-106; 1-SER-108-09; 1-SER-111-12. For instance, the number of customers contributing at least $100,000 in ARR—generally large organizations—*increased* from 144 as of December 31, 2019 to 271 as of September 30, 2020. 1-SER-59. And the percentage of revenue brought in by ON24's ten

_____

[3] Even if plaintiff is correct that *Sodha* created a novel exception to Section 11's standard under which "the proper inquiry" is simply whether an "omitted" subsequent event is "material" (Supp.Br.8), regardless of whether its omission made a prior statement misleading, that would make no difference here. That is because the narrow factual circumstance *Sodha* considered—"statement[s] concerning a particular time period and an [undisclosed] event subsequent to that time period"— is not alleged here. The six challenged statements describe facts or events occurring through September 2020 or in undetermined future periods. ER-57 (¶175); ER-59 (¶177); ER-61 (¶179); ER-63 (¶181); ER-63-64 (¶182); ER-64 (¶183). The allegedly undisclosed "events" were contemporaneous with, not subsequent to, that time period—to the extent plaintiff even specifies. ER-57 (¶176(a)) (alleged customer-base shift began March 2020); ER-42-43 (¶¶102-03, 106-7) (alleged expressions of non-renewal intentions occurred during unspecified periods in 2020).

largest customers by revenue dropped just 3% in the year-over-year period between September 30, 2019 and September 30, 2020 (from 22% to 19%). 1-SER-109. Thus, ON24's customer base was always a heterogenous one—and at the time of the IPO, was still comprised in significant part of existing, large-company customers. To the extent any of this information could possibly suggest the shift plaintiff alleges, that simply means ON24 disclosed what plaintiff complains was omitted.

## II. *SODHA* CONFIRMS THAT PLAINTIFF ALSO FAILS TO ALLEGE VIOLATIONS OF ANY DISCLOSURE DUTY UNDER ITEM 303 OF REGULATION S-K

*Sodha* also clarified the Section 11 disclosure duty that arises under Item 303 of Regulation S-K:

> For Item 303 to impose a duty to disclose, there must be a trend, demand, commitment, event or uncertainty that is known. Assuming that requirement is satisfied, we follow a two-step analysis. First, we assess whether the known trend, demand, commitment, event or uncertainty is likely to come to fruition. Second, if management cannot make that determination, then we must evaluate objectively the consequences of the known trend, demand, commitment, event or uncertainty, on the assumption that it will come to fruition. Disclosure is then required unless management determines that a material effect on the registrant's financial condition or results of operations is not reasonably likely to occur.

154 F.4th at 1037 (internal quotation marks, alterations, and citations omitted). As to trends, *Sodha* explained that determining whether a trend exists "require[s] an assessment of whether an observed pattern accurately reflects persistent conditions

16

of the particular registrant's business environment." *Id.* at 1038. And "not every material change will be persistent, important, or unusual enough to be a 'trend.'" *Id.* None of *Sodha*'s statements about the proper analysis under Item 303 cures the flaws in plaintiff's Item 303 theory—indeed, if anything, *Sodha* confirms its deficiency.

### A. Plaintiff Fails To Allege Any Risk Of Future Non-Renewal That ON24 Was Required To Disclose

Throughout this litigation, plaintiff's alleged "trend," "event," or "uncertainty" has been a moving target. When pressed for clarification by the district court, plaintiff asserted a "trend" that included actual churn. 1-SER-25-29. That theory fails because, for all the reasons explained in ON24's brief, plaintiff failed to plausibly allege that any meaningful pre- or post-IPO churn existed. Response.Br.22-44; *see* ER-18 (district court ruling same in dismissing Item 303 theory). Even assuming plaintiff alleged significant *post*-IPO churn, a trend that has not yet started cannot possibly qualify as a pattern that was "known" or "observed" by ON24 at the time of the IPO. *Sodha*, 154 F.4th at 1037-38 (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1191 (11th Cir. 2002)). Indeed, *Sodha*'s extensive discussion of whether a trend of two months is cognizable would be irrelevant if a *future* trend (*i.e.*, one of no known duration to date) might be enough. Plaintiff's insistence to the contrary—that ON24 should have predicted and disclosed a possible trend of non-renewal that would not have begun until months after the IPO (Supp.Br.12)—cannot be squared with the plain text of the relevant

17

regulation or *Sodha*'s analysis of that regulation. 17 C.F.R. § 229.303(a)(3)(ii); *see Sodha*, 154 F.4th at 1037. Plaintiff admitted as much before the district court: it "agree[d]" that "a risk isn't a trend." 1-SER-17-18. It cannot turn back from that (correct) concession at this late stage.

Regardless, plaintiff's trend theory fails for another reason: plaintiff's internally inconsistent allegations about the existence of churn and the undisputed metrics showing ON24's post-IPO growth. Response.Br.22-44. Plaintiff argues that ON24 cannot rely on those metrics because "[m]ateriality is assessed as of the IPO date, not with the benefit of subsequent developments." Supp.Br.12. But that misses the point: those metrics reinforce the conclusion that there could not have been a known and observed trend that was "persistent" enough to require disclosure at the time of the IPO. *Sodha*, 154 F.4th at 1038-39. Looking to ON24's knowledge before and during the IPO, as plaintiff insists, just confirms that ON24 did not (and could not, absent speculation) believe that the risk of future churn was "likely to come to fruition." *Id.* at 1037. To the contrary, plaintiff alleges that ON24 was hoping to prevent that risk from occurring. ER-56 (¶172). Nothing suggests that this belief was objectively unreasonable—particularly in light of the deeply uncertain environment in February 2021 regarding the future of pandemic-related restrictions. *See Oxford Asset Mgmt.*, 297 F.3d at 1191 (explaining that Item 303 carries a

"negligence standard" under which an issuer's decision not to include information must be "objective[ly] unreasonable[]").

### B. The Same Deficiencies Foreclose Plaintiff's Forfeited, Alternative Item 303 Theory Based On Customer Composition And Stated Retention Intentions

Plaintiff now seeks to reshape the purported trend as limited to "a known pre-IPO shift in customer composition and stated retention intentions." Supp.Br.11. But that argument is forfeited for failure to adequately raise it to the district court—a forfeiture that is particularly acute given the opportunity the district court provided for plaintiff to clarify its arguments. 1-SER-25-29; *e.g.*, *Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018).

Even assuming plaintiff could properly raise this revised theory for the first time in supplemental, post-argument briefing, it fails to present any actionable trend for much the same reasons discussed above. Again, the undisputed facts disclosed in ON24's offering documents preclude the inference that there was a shift away from large, enterprise customers. *See* Response.Br.22-25; ER-23-24 (¶7); ER-37 (¶¶71-72); 1-SER-59; 1-SER-69; 1-SER-108; 1-SER-111-12 (documenting increases in number of customers contributing at least $100,000 of ARR, number of customers with multi-year subscriptions, and revenue from both new and existing customers). Moreover, the internal inconsistencies and vagueness in plaintiff's complaint preclude the inference that any meaningful number of customers

19

announced their non-renewal intentions. Response.Br.36-44. Finally, the alleged facts show ON24 believed, not unreasonably, that it could save at-risk accounts and/or that customers might ultimately decide to renew. *Supra* p.11.

In view of these failures, plaintiff cannot show that either of those purported trends "reflect[ed] persistent conditions of" ON24's "business environment," were "persistent, important, or unusual enough to be a trend," or were likely to come to fruition. *Sodha*, 154 F.4th at 1038-39.

### C. ON24 Satisfied Any Disclosure Obligation That Might Have Existed Under Either Of Plaintiff's Item 303 Theories

Even had ON24 been required to disclose any trend regarding a shift in customer composition and attendant future churn risk, it amply did so in its risk disclosures. *Supra* pp.14-15. ON24 disclosed the increase in new customers by stating that its "recent revenue growth has been significantly impacted by an increasing demand for [its] platform and products following the onset of the COVID-19 pandemic and resulting precautionary measures." ER-63 (¶181); *see also* ER-57-59 (¶¶175, 177). But, it cautioned, there was "no assurance that [it] will continue to experience such accelerated growth." 1-SER-112. ON24 warned it was "possible that, if the effects of the COVID-19 pandemic subside, [its] customers and their users will resume in-person marketing activities in a way that decreases usage of [ON24's] platform." 1-SER-65. And "[i]f these new customers elect not to continue their

subscriptions," ON24's "business, financial condition and results of operations would be harmed." ER-63 (¶181).

Those statements paint the precise picture plaintiff claims was missing from ON24's offering documents: that new customers signed on because of the pandemic, and that depending on the future of pandemic-related restrictions, those new customers might not renew. That is all ON24 needed to do under Item 303. *See Oxford Asset Mgmt.*, 297 F.3d at 1192 ("Item 303(a)(3)(ii) essentially says to a registrant: If there has been an important change in your company's business or environment that significantly or materially decreases the predictive value of your reported results, explain this change."). Plaintiff argues that *Sodha* "rejected similar risk disclosures." Supp.Br.13. But *Sodha*'s Item 303 analysis does not mention any of Robinhood's existing disclosures. 154 F.4th at 1037-41. And in any event, Robinhood's disclosures were potentially inadequate for Section 11 purposes to the extent they framed events that had *already occurred* (namely, decreased revenues) as contingent possibilities. *Id.* at 1034-35. There is no such mismatch here: ON24 described past events—a rise in new customers—as having already occurred, and framed potential future events—subsequent churn—as a contingent possibility.

## CONCLUSION

The district court's dismissal with prejudice should be affirmed.

Dated:  November 16, 2025

Respectfully submitted,

/s/ Brian R. Matsui

ANNA ERICKSON WHITE
DAVID J. WIENER
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105

BRIAN R. MATSUI
MORRISON & FOERSTER LLP
2100 L Street NW, Suite 900
Washington, DC 20037
(202) 887-8784
BMatsui@mofo.com

ALEXANDRA M. AVVOCATO
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019

*Counsel for Defendants-Appellees ON24, Inc.; Sharat Sharan; Steven Vattuone; Denise Persson; Holger Staude; Dominique Trempont; Barry Zwaranstein*

/s/ Thomas M. Peterson

THOMAS M. PETERSON
CHARLENE S. SHIMADA
KEVIN M. PAPAY
MORGAN, LEWIS & BOCKIUS LLP
One Market
Spear Street Tower
San Francisco, CA 94105
(415) 442-1000
thomas.peterson@morganlewis.com

*Counsel for Defendants-Appellees Goldman Sachs & Co. LLC; J.P. Morgan Securities LLC; KeyBanc Capital Markets Inc.; Robert W. Baird & Co. Incorporated; Canaccord Genuity LLC; Needham & Company, LLC; Piper Sandler & Co.; William Blair & Company L.L.C.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-2204

I am the attorney or self-represented party.

**This brief contains** | 4,987 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    ☐ it is a joint brief submitted by separately represented parties.
    ☐ a party or parties are filing a single brief in response to multiple briefs.
    ☐ a party or parties are filing a single brief in response to a longer joint brief.

⦿ complies with the length limit designated by court order dated | 09/18/2025 |.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Brian R. Matsui | **Date** | 11/16/2025

*(use* "s/[typed name]" *to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**          *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system on November 16, 2025.

I certify that all participants in this case are registered ACMS users and that service will be accomplished by the ACMS system.

Dated: November 16, 2025      /s/ Brian R. Matsui
                                   Brian R. Matsui

MF-361058668